# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JANICE G. THORNTON,<br>    Plaintiff,<br><br>v.<br><br>PHILPOT RELOCATION SYSTEMS, et al.,<br>    Defendants. | )<br>)<br>)<br>)   No. 3:09-CV-329<br>)   (Phillips)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff entered into a contract with defendants to transport her household goods and furniture from Flowery Branch, Georgia to Knoxville, Tennessee. The goods were first delivered to a storage facility in Tucker, Georgia, and ultimately delivered to plaintiff's residence in Tennessee in September 2005. Plaintiff alleges that defendants allowed the goods to become damaged or destroyed in transit. This matter is before the court on the defendants' motion for summary judgment [Doc. 31]. Specifically, defendants aver that (1) as agents of a disclosed principal, they cannot be liable pursuant to a duly issued bill of lading contract; (2) the Carmack Amendment preempts all of plaintiff's claims as a matter of law; and (3) plaintiff's claims are barred by the applicable statute of limitations.

## I. Background

In 1998, plaintiff and her husband relocated their business from Georgia to Knoxville, Tennessee. In 1999, plaintiff contracted with defendant Philpot Relocation and its affiliates[1], to handle both the moving and the interim storage of her household goods. Defendant Atlantic Moving & Storage, Inc., picked up plaintiff's household goods pursuant to Atlantic's Uniform Household Goods Bill of Lading and delivered the goods to storage. The household goods remained in storage for several years. On or about August 12, 2005, plaintiff requested that defendant Philpot Relocation transport her household goods from storage in Tucker, Georgia to Knoxville, Tennessee. Defendant Atlas Van Lines, Inc.[2] picked up plaintiff's household goods for transport from Georgia to Tennessee, pursuant to Atlas' Uniform Household Goods Bill of Lading, which was issued on or about September 19, 2005.

When the household goods were delivered to plaintiff's residence, she discovered that a substantial number of her household goods had been damaged or destroyed. Many items displayed water and mildew damage, indicating that they had been placed or stored in standing water. Other items had been damaged as a result of rough handling. Plaintiff estimates that the replacement value of items that cannot reasonably be repaired and restored is in an amount of "not less than $150,000." Plaintiff avers that the household goods were in good condition at the time they were placed with the defendants.

---

[1] The record shows that defendant Philpot Moving & Storage was administratively dissolved in 2001 and does not exist at this time.

[2] Atlas Van Lines, Inc., was previously dismissed as a defendant in this case [Doc. 30].

Plaintiff further avers that defendants failed to use reasonable care in the storage and delivery of her household goods.

Plaintiff submitted a damage claim form to defendants on June 20, 2006. On or about March 20, 2007, Atlas gave written notice that it denied liability for a part of plaintiff's claim. Counsel for plaintiff acknowledged receipt of the March 20, 2007 denial letter, and responded with letters dated April 13, and May 17, 2007. On or about May 25, 2007, Atlas reaffirmed its March 20, 2007 denial of a part of plaintiff's claim. Plaintiff brought the instant action against defendants on June 26, 2009, alleging breach of contract, bailment, and breach of warranty under state law.

Plaintiff alleges that she never negotiated with any Atlas employee from the first discussion in 1999 through the delivery of her household goods at her Tennessee residence in 2005. Instead, the initial move was made under contract paperwork provided by Philpot Relocation permitting intrastate moves under the authority issued in the name of its related company, Atlantic Moving & Storage, Inc. Plaintiff avers that Atlas had no participation with the first move, even to the extent of providing contract paperwork or allowing the use of its authority. Further, Atlas had no participation or involvement in the storage of her household goods in Georgia between 1999 and 2005. Plaintiff avers that no employee of Atlas ever at any time was in control or possession of her household goods.

In addition, plaintiff states that the Philpot Relocation driver engaged to transport her household goods from storage in Georgia to Tennessee "took exceptions against the warehouse for anything that, as he picked it up, was different than when it was delivered into the warehouse." These exceptions consisted of four pages of discrepancies. Plaintiff avers that Philpot Relocation was aware that there were a number of problems and/or damage to her household goods, at the time of retrieving them from storage in Georgia.

## II. Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if

4

the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

**A.     Defendant Philpot Relocation, as agent for a disclosed principal, cannot be held liable pursuant to a duly issued bill of lading contract.**

Defendants argue that as a disclosed agent of Atlantic/Atlas, they cannot be held liable under the bill of lading. The United States Code provides:

> Carriers responsible for agents – Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a).

"Household goods agents" are defined at 49 C.F.R. § 375.14 to include "agents who are permitted or required under the terms of any agreement or arrangement with a principal carrier to provide any transportation service for or on behalf of the principal carrier, including the selling of or arranging for any transportation service . . . ." Plaintiff avers that because she dealt directly with Philpot Relocation, it is not protected by its agency status and is liable for her claims.

Contrary to plaintiff's argument, courts have regularly held that the agents of disclosed principals are not liable for damages arising under § 13907(a) and that these agents are not parties to the bill of lading as a matter of law. *See e.g., Taylor v. Mayflower*

5

*Transit, Inc.,* 161 F.Supp.2d 651, 658 (W.D.N.C. 2000); *O'Donnell v. Earles W. Noyes & Sons,* 98 F.Supp.2d 60, 63 (D.Me. 2000); *Werner v. Lawrence Transp. Systems, Inc.,* 52 F.Supp.2d 567, 568 (E.D.N.C. 1998); *Fox v. Kachina Moving & Storage,* 1998 WL 760268, *1 (N.D.Tex. Oct. 21, 1998); see also Restatement (Second) of Agency § 320. Here, plaintiff's complaint states that "The Thorntons learned . . . that Atlas listed and acted through authorized agents. Among these authorized agents was Philpot Relocation, which was the closest agent to the then location of the household goods." A person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract. *See Kashala v. Mobility Services, Int'l LLC,* 2009 WL 2144289, *6 (D.Mass. May 12, 2009). There is no material fact in dispute that Philpot Relocation was a disclosed household goods agent and cannot be liable for plaintiff's claims in this case.

**B.    Plaintiff's state law claims are preempted by the Carmack Amendment**

Defendants also contend that plaintiff's state law claims are preempted as a matter of law by operation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Carmack Amendment provides sweeping preemptive power over state or common law claims arising out of property loss or damage that occur as a result of interstate transport. The Carmack Amendment's definition of "transportation" is quite broad, encompassing "services related to the goods' movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, **storage**, **handling**, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(21)(B) (emphasis supplied). Since plaintiff contracted for the shipment of her

6

household goods to be transported from Georgia to Tennessee, the shipment and the parties' rights, duties and liabilities with respect thereto are governed exclusively by the Carmack Amendment to the Interstate Commerce Act. The statute defines the scope and extent to which an interstate motor carrier can be liable to a shipper on a claim of loss or damage to an interstate shipment of goods. The provisions of the Carmack Amendment supersede all the regulations and policies of a particular state and govern exclusively in determining the liability of a carrier transporting freight (including household goods) in interstate commerce. No state law can be applied in determining the scope of liability of an interstate motor carrier under the Carmack Amendment. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913); *W.D. Lawson & Co. v. Penn. Central Co.,* 456 F.2d 419, 421 (6th Cir. 1972); *Intech Inc. v. Consolidated Freightways*, 836 F.2d 672, 677 (1st Cir. 1987); *Rini v. United Van Lines Inc.,* 104 F.3d 502 (1st Cir. 2007).

Moreover, precisely when plaintiff's property was damaged is irrelevant to assessing the application of the Carmack Amendment. The dispositive fact is that all of plaintiff's claims are based on allegations that defendants damaged and/or destroyed property whose transportation and storage was governed by an interstate bill of lading. Such claims are completely preempted. The court finds that plaintiff's state law claims for breach of contract, bailment, and breach of warranty fall squarely within the exclusive ambit of the Carmack Amendment. All of plaintiff's claims stem from an interstate move, and are, therefore, preempted by the Carmack Amendment. The case law dictates that the statutory federal remedy provided in the Carmack Amendment precludes plaintiff from pursuing her

7

common law claims, and the defendants are entitled to summary judgment as to all of plaintiff's state law claims**.**

C. **Plaintiff's Carmack Amendment claim is barred by the applicable statute of limitations.**

On October 7, 2010, plaintiff amended her complaint to add a claim against defendants under the Carmack Act. Defendants contend that plaintiff's claim under the Carmack Amendment should be dismissed as untimely, as it was filed beyond the contractual two year and one day statute of limitations. The Interstate Commerce Act requires a common carrier, such as Atlantic/Atlas, to issue a receipt or bill of lading for property it receives for transport. 49 U.S.C. § 14706(a)(1). The carrier is then liable to the party entitled to recover under the receipt or bill of lading for any "actual loss or injury to the property." *Id.* The only statutorily specified limitations relating to the time for filing a claim under § 14706 are restrictions imposed on the parties' authority to contract for time limitations, as set forth in § 14706(e). That section provides:

> A carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier or freight forwarder gives a person written notice that the carrier or freight forwarder has disallowed any part of the claim specified in the notice.

The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier, so long as the minimum conditions of § 14706(e) are met. *See Swift Textiles, inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 704

8

n. 4 ("The Carmack Amendment on its face contemplates that the choice of a statute of limitation is to lie with the shipper subject to the minimum time limit prescribed by the Act . . . . The Act clearly anticipates statutes of limitations and legislatively approves any limitation period exceeding two years").

In this case, plaintiff received two bills of lading. The Atlantic bill of lading provides:

> As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after a reasonable time for delivery has elapsed, and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice.

Likewise, the Atlas bill of lading states as follows:

> You must file any lawsuit within two years and one day from the date when we give you written notice that we have disallowed your claim or any part of it.

Moreover, the bill of lading referenced and incorporated Atlas' tariff that contains the same limitation. The tariff provision states as follows:

> As a condition precedent to recovery, a claim for any loss or damage injury or delay, must be filed in writing with the carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice.

9

Here, both bills of lading reference and incorporate the applicable two year and one day limitations period. It is undisputed that plaintiff received and signed the Atlantic bill of lading and had reasonable notice of the limitations period. Moreover, the record shows that plaintiff was presented with the second (Atlas) bill of lading, reproducing the tariff language that binds the shipper to a two year and one day period of limitation within which to bring a civil action.

Plaintiff states that Philpot Relocation responded to her claims on June 22, 2007, and that she received another letter from Philpot Relocation dated June 28, 2007. Plaintiff argues that the June 28, 2007 letter was the first notice of disallowance issued by Philpot Relocation and her complaint filed on June 26, 2009 is thus timely. However, plaintiff ignores the record evidence in this case that on March 20, 2007, plaintiff received written notice from Atlas that part of her claim had been denied. Following the March 20, 2007 denial, plaintiff then had two years and one day to file suit against defendants pursuant to the contractual statute of limitations set forth in the bill of lading. Plaintiff did not commence this action until June 26, 2009, which is more than two years and one day after the contractual statute of limitations for plaintiff to bring a civil action against defendants. Accordingly, the court finds that defendants are entitled to summary judgment on plaintiff's Carmack Amendment claim.

### III. Conclusion

For the reasons previously stated, defendants' motion for summary judgment [Doc. 31] is **GRANTED;** and this action is hereby **DISMISSED with prejudice.**

Defendant's motion for hearing on the motion for summary judgment [Doc. 44] is **DENIED as moot.**

**ENTER:**

　　　s/ Thomas W. Phillips　　
United States District Judge